# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 12-1033

**WASTE MANAGEMENT OF LOUISIANA, LLC**

**VERSUS**

**PENN-AMERICA INSURANCE COMPANY, ALBERT D. GIRAUD, J. MICHAEL NASH, GINGER K. DEFOREST, AND ABC INSURANCE COMPANY**

**\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2006-002452
HONORABLE RONALD F. WARE, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE
JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**John W. deGravelles
J. Neale deGravelles
deGravelles, Palmintier, Holthaus & Fruge, LLP
618 Main Street
Baton Rouge, Louisiana 70801
(225) 344-3735
COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Waste Management of Louisiana, LLC**

**Emmett C. Sole**
**William B. Monk**
**Paul P. Marks**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, Louisiana  70602-2900**
**(337) 436-9491**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Albert D. Giraud, J. Michael Nash,**
    **and Ginger K. DeForest**

**GENOVESE, Judge.**

Plaintiff, Waste Management of Louisiana, LLC (Waste Management), appeals the trial court's grant of summary judgment in favor of Defendants, Albert D. Giraud, J. Michael Nash, and Ginger K. DeForest (hereinafter referred to collectively as Defendant Attorneys). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter involves a legal malpractice lawsuit filed by Waste Management against Defendant Attorneys on the basis that Defendant Attorneys' representation of Waste Management during the appeal process in a personal injury lawsuit allegedly presented conflicts of interest for which Defendant Attorneys should have withdrawn from their representation of Waste Management. The facts of the lawsuit for which Defendant Attorneys represented Waste Management were set forth in a previous opinion of this court as follows:

> Waste Management of Louisiana, LLC entered into a contract with the City of Lake Charles to remove debris associated with a January 1997 ice storm. Because Waste Management did not have the necessary employees and equipment, it engaged Delta Exports, Inc. to perform the required work. Delta Exports then engaged Jack Gibson d/b/a J & P Logging to undertake the clean-up.
>
> The accident at issue occurred on February 7, 1997, as the process was underway. Johnny Leroy Cobb, the plaintiff, alleges that he was traveling to a business appointment via Louie Street and saw a crew removing debris on the street. He denies seeing barricades or flagmen deterring his passage on the road. Mr. Cobb alleges that the accident occurred when he tried to pass the work crew's front-end loader. He contends that the loader, driven by James Wright of J & P Logging, backed into his car. . . .
>
> . . . .
>
> Mr. Cobb filed suit, naming as defendants the City of Lake Charles, Waste Management, Delta Exports, Jack Gibson d/b/a J & P Logging, and the driver of the front-end loader, James Wright. Delta Exports' insurer, Penn-America Insurance Company was also named as a defendant. Summary judgments were originally entered in favor of the City of Lake Charles, Waste Management, and Delta Exports, but were reversed on appeal to this court. *See Cobb v. Delta Exports,*

*Inc.*, 03-33 (La.App. 3 Cir. 6/4/03), 847 So.2d 739, *writs denied*, 03-1906 (La.10/31/03), 857 So.2d 483, 03-1936 (La.10/31/03), 857 So.2d 485.

After the matter proceeded to trial, a jury found that Mr. Wright, Delta Exports, and Waste Management were at fault in causing the accident. The plaintiff, Jack Gibson d/b/a J & P Logging, and the City of Lake Charles were found not to be at fault. Mr. Wright was also found to be the borrowed employee of Delta Exports. The jury apportioned 25% of the fault to Mr. Wright, 25% to Delta Exports, and 50% to Waste Management.

The jury awarded [damages totaling $2,267,483.71].

*Cobb v. Delta Exports, Inc.*, 05-509, pp. 1-2 (La.App. 3 Cir. 12/30/05), 918 So.2d 1080, 1083-84, *writ denied*, 06-225 (La. 4/24/06), 926 So.2d 551.

The lawsuit which forms the basis for the present appeal was filed on May 25, 2006. Waste Management filed a Petition for Damages, and in the Alternative Only, Action to Nullify Final Judgment, against Defendant Attorneys and their insurer. Waste Management alleged that during the appeal process of the underlying litigation, *Cobb v. Delta Exports, Inc.*, Docket Number 97-3701, Division D, 14th Judicial District Court, Parish of Calcasieu, Defendant Attorneys were faced with clear conflicts of interest for which they should have withdrawn from their representation of Waste Management, yet did not. Waste Management contends that it was wrongfully required to pay its portion of a judgment with interest of over $1,800,000.00 due to Defendant Attorneys' malpractice.

On December 27, 2006, Defendant Attorneys filed an Exception of Peremption which was granted by the trial court on October 23, 2007. As a result, all of Waste Managements' claims against Defendant Attorneys stemming from alleged acts that occurred prior to May 26, 2005 were dismissed with prejudice.

Defendant Attorneys filed a motion for summary judgment on November 14, 2008, asserting that the evidence supported their position that they did not breach their duty to Waste Management. After a hearing on May 8, 2009, the trial court

denied Defendant Attorneys' motion for summary judgment, citing insufficient discovery. A concomitant judgment was signed by the trial court on May 19, 2009.

On May 6, 2011, Defendant Attorneys filed a second motion for summary judgment. Unlike their previous motion, Defendant Attorneys asserted that the doctrine of equitable estoppel precluded Waste Management's claims. Defendant Attorneys' motion for summary judgment was heard and granted by trial court on March 2, 2012. On March 30, 2012, the trial court signed a judgment granting Defendant Attorneys' motion for summary judgment declaring "all remaining claims of [Waste Management] versus [Defendant Attorneys] covered by the [motion for summary judgment], that is, all such claims arising from events occurring on or after May 25, 2005, are dismissed with prejudice." It is from this judgment that Waste Management appeals.

## ASSIGNMENT OF ERROR

On appeal, Waste Management asserts the following:

The trial court erred in granting the [D]efendant [A]ttorneys' [m]otion for [s]ummary [judgment] on the basis of the equitable estoppel doctrine when, under the facts presented, this doctrine does not apply because it is undisputed that[:]

A.   Waste Management made no false or misleading representation of fact; and

B.   The [D]efendant [A]ttorneys never changed their position in reliance on any conduct or representations of Waste Management.

## LAW AND DISCUSSION

In order to establish a claim for legal malpractice, a plaintiff must prove that (1) there was an attorney-client relationship; (2) the attorney was negligent in his representation of the plaintiff; and (3) the plaintiff sustained a loss as a result of the

3

attorney's negligence. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129; *Morgan v. Simon*, 00-1556 (La.App. 3 Cir. 2/28/01), 780 So.2d 626.

As this matter comes to us on an appeal of the grant of a summary judgment, we note that summary judgments are reviewed de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. La.Code Civ.P. art. 966(B). A de novo review is the proper standard of review in a summary judgment case where there are contested issues of fact. *Guillot v. Guillot*, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212. However, "[i]n a case where there are no contested issues of fact[] and the only issue is the application of the law to the undisputed facts, . . . the proper standard of review is whether or not there has been legal error." *Tyson v. King*, 09-963, p. 2 (La.App. 3 Cir. 2/3/10), 29 So.3d 719, 720 (quoting *Bailey v. City of Lafayette*, 05-29, p. 2 (La.App. 3 Cir. 6/1/05), 904 So.2d 922, 923, *writs denied*, 05-1689, 05-1690, 05-1691, and 05-1692 (La.1/9/06), 918 So.2d 1054, 1055, and the cases cited therein). In the case at bar, there are no contested facts. The issue before this court is the application of the law to the undisputed facts; therefore, our review is to determine whether the trial court committed legal error when it ruled that the doctrine of equitable estoppel applies and precludes Waste Management's claims against Defendant Attorneys.

This court, in *Roberson v. Lafayette Oilman's Sporting Clays Shoot, Inc.*, 02-1275, 02-369, pp. 4-5 (La.App. 3 Cir. 4/30/03), 845 So.2d 1267, 1270, *writ denied*, 03-1531 (La. 9/26/03), 854 So.2d 370, stated:

> Equitable estoppel or 'estoppel in pais' can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable

4

> reliance; and (3) a change in position to one's detriment because of the reliance.

> *Elliott v. Catahoula Parish Police Jury*, 02-09, p. 1 (La.App. 3 Cir. 5/8/02); 816 So.2d 996, 997 (quoting *Wilkinson v. Wilkinson*, 323 So.2d 120, 125 (La.1975)).

> In *Morris v. Friedman*, 94-2808, p. 9 (La.11/27/95); 663 So.2d 19, 25, the supreme court further elaborated on this issue: "[A] party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Further, estoppels are not favored in our law, and properly apply only as to representations of fact. . . . Finally, '[e]quitable considerations and estoppel cannot be permitted to prevail when in conflict with the positive written law.'"

Waste Management contends that at least two of the essential elements required for the doctrine of equitable estoppel to apply—false or misleading representations and a change in position in reliance upon said false or misleading representations—were absent in this case; therefore, it was error for the trial court to grant Defendant Attorneys' motion for summary judgment and dismiss its claims based upon equitable estoppel. Relying heavily upon our supreme court's holding in *MB Industries, LLC v. CNA Insurance Co.*, 11-303, 11-304 (La. 10/25/11), 74 So.3d 1173, Waste Management argues that "[w]hen the test and factors set out in *MB Industries* are applied to the facts of this case, it is clear that the trial court made a patently erroneous decision in applying equitable estoppel."

In *MB Industries*, 74 So.3d 1173, the defendants urged that the doctrine of equitable estoppel precluded the plaintiffs' claims on the basis that the plaintiffs effectively waived their right to sue defendants for legal malpractice when the plaintiffs failed to perfect an appeal in the underlying litigation. Our supreme court rejected defendants' arguments stating:

> A claim of waiver by failure to appeal is thus not "equitable estoppel" as the doctrine has been defined by this Court. Strictly speaking, equitable estoppel applies only where a party has made false

or misleading representations of fact and the other party justifiably relied on the representation. *State v. Mitchell*, 337 So.2d 1186, 1188 (La.1976). We must narrowly construe this argument, as "estoppel is not favored in our law," *Id.*, and estoppel is a "doctrine of last resort." *Howard Trucking Co., Inc. v. Stassi*, 485 So.2d 915, 918 (La.1986). Because [plaintiff's] decision not to pursue an appeal was not a representation of fact which [defendants] justifiably relied upon to their detriment, equitable estoppel does not apply.

The issue is more properly framed as a failure to mitigate damages . . . .

*Id.* at 1180-81.

Specifically, Waste Management asserts that Defendant Attorneys failed to prove that "Waste Management made **affirmative** 'false or misleading representations of fact'" and that "Waste Management caused [Defendant Attorneys] to rely on this to their detriment and change their position."

Defendant Attorneys argue that Waste Management's reliance upon *MB Industries*, 74 So.3d 1173, is misplaced. We agree. Waste Management fails to recognize the clear distinction between the facts herein and those in *MB Industries*. Waste Management made certain representations to Defendant Attorneys. Defendant Attorneys relied upon and changed their position based upon said representations. Waste Management argues, however, that because the representations upon which Defendant Attorneys relied were not "false or misleading representations," estoppel does not apply. We disagree.

Since being named a defendant in the supplemental and amending petition filed on January 23, 1998, in the underlying litigation, Waste Management's defense was handled by counsel representing Penn-America Insurance Company (Penn-America). Penn-America was the insurer of Delta Exports, Inc., the subcontractor whom Waste Management hired to perform the debris removal. In September 2001, Defendant Attorneys substituted themselves as counsel of record,

and their involvement in this litigation and representation of Waste Management began.

Waste Management admittedly retained separate, independent counsel in April 2004, when it hired the law firm of Taylor, Wellons, Politz & Duhé (the Taylor Firm). However, the Taylor Firm never officially enrolled as counsel of record in representation of Waste Management in the underlying litigation. After the April 2004 jury trial in the underlying litigation, the trial court held that Waste Management was not an insured under the Penn-America insurance policy.

On June 7, 2004, Michael Mentz, an attorney hired by Penn-America to represent only its interests, sent written correspondence advising Waste Management that Penn-America was taking the position that Waste Management was not an insured under its policy. Mr. Mentz's letter advised Waste Management that should the Taylor Firm consent, Defendant Attorneys would withdraw from their representation of Waste Management. The letter stated: "In light of Penn-America's position relative to Waste Management's status under its policy, if Waste Management is not comfortable with [Defendant Attorneys] continued representation . . . Penn-America will pay [the Taylor Firm's] attorney[] fees and costs to undertake the defense of Waste Management solely in that litigation." Waste Management elected not to officially enroll the Taylor Firm as its counsel.

At a post-trial hearing, also in June 2004, Defendant Attorney, Albert D. Giraud, argued the holding of *Steptore v. Masco Construction Co., Inc.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, in an effort to obtain a favorable judgment of coverage for Waste Management under Penn-America's policy. In *Steptore*, 643 So.2d 1213, our supreme court held that an insurer which accepts coverage and does not timely assert coverage defenses is deemed to have waived those defenses,

even if valid.  However, despite Mr. Giraud's urging of *Steptore*, the trial court allocated all of the available insurance coverage provided by Penn-America to Delta and none to Waste Management.

In November 2004, Mr. Giraud also sent written correspondence by electronic mail to the Taylor Firm extending much of the same offer as was previously made by Mr. Mentz the preceding June.  Mr. Giraud even attached to the e-mail a motion for the Taylor Firm to substitute as counsel of record for Waste Management.  Again, Waste Management did not elect to officially enroll the Taylor Firm as its counsel.

Waste Management alleges that Defendant Attorneys' representation of its interests during the appeal of the underlying litigation's jury verdict was marred by Defendant Attorneys' conflicts of interest by continuing to also represent Penn-America.  Waste Management contends that because Defendant Attorneys did not continue to cite and argue the holding of *Steptore* in the writ applications both to this court and to the Louisiana Supreme Court, Defendant Attorneys breached their duty to competently represent Waste Management's interests.

Defendant Attorneys counter by arguing that the Taylor Firm was provided copies of its appellate pleadings, and the only feedback it ever received was grammatical and stylistic suggestions.  The Taylor Firm did not seek to have Defendant Attorneys urge the holding in *Steptore* in its writ applications. Defendant Attorneys assert, however, that it was argued, though unsuccessfully, that the trial court erred in ruling that Waste Management was not insured under Penn-America's policy.

In the instant matter, the trial court, in ruling on Defendant Attorneys' motion for summary judgment, stated:

To say that Waste Management hired an attorney, an independent attorney, for them to kind of keep an eye on what was happening to protect their interests; and these attorneys or that firm, [were] actively involved in the preparation of these writ applications to the Third Circuit and to the Louisiana Supreme Court, made suggestions, never made the direct suggestions or the specific suggestions that . . . *Steptore* be argued. They just can't have it both ways.

I do believe that equitable estoppel applies[] in this case, because it's not fair. It's just not fair to kind of invite them in to do certain things and go along with them, and even say the brief looks okay to me. And now complain, you blew it, when they were given a chance to respond[] on behalf of Waste Management; and to advise Waste Management, which obviously, they did and have done; and probably continue to do. . . .

. . . [I]t just seems unfair for [the Taylor Firm], as an agent representative attorney for Waste Management, to be actively, not passively, involved in preparing the Post-verdict pleadings, and the appellate - - being involved in the appellate process, and then come back; and Waste Management gets the opportunity to hold those, who [the Taylor Firm] consulted with and collaborated with, responsible. You just can't have it both ways.

. . . I find that Waste Management is estopped from asserting any claims against the attorneys in this instance. I find in favor of the [Defendant Attorneys] in this case; and I'm going to grant the Motion for Summary Judgment.

The first element of estoppel—a representation by conduct or word—was satisfied by Waste Management's conduct. Despite benefit of its own separate legal counsel (the Taylor Firm), Waste Management declined Defendant Attorneys offers to withdraw. Defendant Attorneys relied upon Waste Management's acquiescence, inferring that Waste Management did not believe a conflict of interest existed to necessitate Defendant Attorneys' withdrawal.

The second element of estoppel—justifiable reliance—is present. Defendant Attorneys sent a motion to Waste Management for the Taylor Firm to substitute as counsel of record for Waste Management. Still, Waste Management took no action and did not file said motion. Defendant Attorneys reasonably assumed and relied upon the fact that Waste Management did not wish for Defendant Attorneys

to withdraw. We find that Waste Management's acquiescence constituted a misleading representation, contrary to Waste Management's position that there were no "false or misleading representations of fact" upon which Defendant Attorneys justifiably relied and to which equitable estoppel applies. *MB Industries*, 74 So.3d at 1180.

The third and final element of estoppel—a change in position to one's detriment because of the reliance—is likewise present. Defendant Attorneys reasonably inferred that Waste Management was satisfied with its legal representation and did not consider the existence of a possible conflict of interest as necessitating its withdrawal; therefore, Defendant Attorneys changed their position from withdrawing as counsel of record to remaining as counsel of record. Defendant Attorneys even voluntarily kept Waste Management's separate, independent counsel, the Taylor Firm, apprised of the efforts of their representation. As stated by the trial court, Waste Management "can't have it both ways."

In brief, counsel for Waste Management repeatedly claims that Defendant Attorneys had a "non-waivable conflict of interest." Whether or not Defendant Attorneys had a non-waivable conflict of interest is an ethical issue governed by the Rules of Professional Conduct regulating the actions of members of the Louisiana State Bar Association and not a matter before this court. Furthermore, the issue of a non-waivable conflict of interest was not specified as an error and is not properly before the court for consideration. *See* Uniform Rules—Courts of Appeal, Rule 1–3; *Charles v. Landry*, 09-1161 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164.

Considering the facts and applicable law set forth above, we find that the record supports the finding of the trial court, and we find no legal error in the trial

court's judgment. Defendant Attorneys clearly relied on the conduct, or in this case, the silence and acquiescence of Waste Management, to infer that it did not object to Defendant Attorneys' representation. To hold otherwise would be to render an unfair and unjust result. The trial court was legally correct in applying the law of equitable estoppel to the facts of this case.

### DECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Defendants/Appellees, Albert D. Giraud, J. Michael Nash, and Ginger K. DeForest, is affirmed. Costs of this appeal are assessed against Plaintiff/Appellant, Waste Management of Louisiana, LLC.

**AFFIRMED.**